In the

# United States Court of Appeals
## For the Seventh Circuit

No. 25-2428

IRMA HERRERA,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-05238 — **Franklin U. Valderrama**, *Judge.*

ARGUED MAY 19, 2026 — DECIDED AUGUST 14, 2026

Before BRENNAN, *Chief Judge*, and ST. EVE and KOLAR, *Circuit Judges*.

PER CURIAM. Irma Herrera alleges her obstetricians committed medical malpractice when she gave birth at a community health clinic in Chicago. She sued them in state court, seeking damages for her serious injuries. But the health clinic receives federal funding, so Herrera's only remedy runs against the United States under the Federal Tort Claims Act. *See* 42 U.S.C. § 233(a), (g). The Attorney General removed

Herrera's case to federal court after certifying that the doctors were acting within the scope of their employment at the time she was injured. *Id.* § 233(c).

The district court dismissed her case for failure to exhaust her administrative remedies. 28 U.S.C. § 2401(b). Seeking to save her claim, Herrera complied with the Westfall Act's saving provision, *id.* § 2679(d)(5), returned to federal court, and filed this case.

In *Evans v. United States*, this court considered a procedurally identical, and factually similar, case. 132 F.4th 473, 475–79 (7th Cir. 2025). *Evans* holds that the saving provision of the Westfall Act does not apply to medical malpractice cases removed under 42 U.S.C. § 233(c). *Id.*[1] So, the district court dismissed Herrera's case. But she contends *Evans* was wrongly decided, raising statutory arguments not presented to the panel in that case.

We decline to overrule *Evans*. The doctrine of stare decisis "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Joy v. Penn-Harris-Madison Sch. Corp.*, 212 F.3d 1052, 1065 (7th Cir. 2000) (quoting *Payne v. Tennessee*, 501 U.S. 808, 827 (1991)). This court overturns its own recent precedent only when given a "compelling reason to do so."

---

[1] "Saving, not savings, is the precise word for a statutory provision exempting from coverage something that would otherwise be included." *McCarthan v. Dir. of Goodwill Indus.-Suncoast, Inc.*, 851 F.3d 1076, 1081–82 (11th Cir. 2017) (quoting BRYAN A. GARNER, GARNER'S DICTIONARY OF LEGAL USAGE 797 (3d ed. 2011)) (citation modified). For consistency, we use "saving provision" throughout, even though *Evans* used "savings provision" and "savings clause" interchangeably. 132 F.4th at 475–76.

*Bethesda Lutheran Homes and Servs., Inc. v. Born*, 238 F.3d 853, 858 (7th Cir. 2001). Herrera has not pointed to any such reasons; she simply argues that *Evans* was wrongly decided. Without more, we choose to stand by our prior panel precedent.

As we have reminded members of the medical malpractice bar before, it is "no secret" whether a clinic or its doctors "may be sued for malpractice only under the Federal Tort Claims Act." *Arteaga v. United States*, 711 F.3d 828, 834 (7th Cir. 2013). The Health Resources and Services Administration maintains a database of all clinics and health centers "deemed" employees of the Public Health Service—meaning the remedy for torts committed by their employees may lie only against the United States under the Federal Tort Claims Act. *See Federal Tort Claims Act Search Tool*, HRSA DATA WAREHOUSE (last accessed July 14, 2026), https://data.hrsa.gov/topics/health-centers/ftca-search-tool; *see also* 42 U.S.C. § 233(g). To avoid Herrera's fate, this database should be the first stop for plaintiffs' attorneys dealing with similar cases.

AFFIRMED

BRENNAN, *Chief Judge*, dissenting. At twenty-three-years of age, Irma Herrera was forced to have a hysterectomy after she gave birth to her third child. She alleges that negligent care by her obstetricians during and after her delivery caused her to suffer a "massive hemorrhage" and organ failure due to shock from the bleeding. So, she sued them in state court, alleging they committed medical malpractice.

Five months after Herrera filed suit, an unexpected party intervened: the United States of America. As it turned out, the clinic where Herrera gave birth received federal funding from the U.S. Public Health Service. That meant the clinic had been "deemed … an employee of the Public Health Service" under 42 U.S.C. § 233(g), so Herrera's only remedy ran against the United States under the Federal Tort Claims Act. *See id.* § 233(a).

What happened next is the crux of the dispute in this case. The U.S. Attorney for the Northern District of Illinois certified that Herrera's doctors were acting within the scope of their employment when they treated her and removed the case to federal court, as 42 U.S.C. § 233(c) permits. Then, he averred that "the United States is substituted as the defendant in lieu of" the individual defendants.[1] Now proceeding in federal court, the government moved to dismiss Herrera's case because she did not exhaust her administrative remedies. *See* 28 U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred unless it is [timely] presented … to the appropriate Federal agency."). The court granted that motion.

Herrera is not the first person to have been surprised that her tortfeasor qualified as a government agent. Indeed, this

---

[1] Notice of Removal, No. 1:19-cv-02966, Dkt. 1 at 3 (N.D. Ill. 2019).

problem can be traced back over sixty years to the early days of the Federal Tort Claims Act. *See, e.g.*, *Whistler v. United States*, 252 F. Supp. 913, 914–15 (N.D. Ind. 1966). That is why Congress added a saving provision to the Westfall Act (formally known as the Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub. L. No. 100-694). If a plaintiff mistakenly files in state court first because she assumes her tortfeasors are private citizens, her claim "shall be deemed to be timely presented … if … the claim would have been timely had it been filed on the date the underlying civil action was commenced" and if the plaintiff presents her claim "to the appropriate Federal agency within 60 days after dismissal of the civil action." 28 U.S.C. § 2679(d)(5).

Hoping to take advantage of the saving provision, Herrera complied with its terms to the letter. Once her administrative claim was denied, she filed this suit in federal court, arguing her claim should be deemed timely.

While her suit was pending, this court decided *Evans v. United States*, 132 F.4th 473 (7th Cir. 2025). There, the court held that the saving provision did not apply to cases removed from state court under the 42 U.S.C. § 233(c). *Id.* at 475. That is because the Westfall Act does not govern in cases "when the government deems the sued medical professional to be a federal employee, certifies that he was acting within the scope of his employment, and replaces him as a party under" § 233. *Id.*

But I see a fatal flaw with this holding: it is not possible for the United States to automatically replace individual defendants under § 233 alone. Asking us to overturn *Evans*, Herrera observes that the plain text of the statute contains no language permitting substitution of the United States as a defendant in medical malpractice tort actions. That sets it apart from the

Westfall Act, which contains express language mandating substitution: "the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(2). So, the *Evans* decision was built on an assumption that lacked support in the operative statute.

I respectfully dissent because I believe *Evans* should be overruled. The plain text of the statute, read in tandem with the Westfall Act, shows that any time the United States automatically substitutes itself as the defendant in a medical malpractice tort action, it does so under the Westfall Act. That means that act's saving provision applies.

This opinion proceeds in three parts. First, I outline the history of exclusivity provisions applied to the Federal Tort Claims Act, which provides necessary background for understanding the statute here. Next, and importantly, I explain why the plain text of 42 U.S.C. § 233(c) contravenes *Evans*. Finally, I discuss why the principle of stare decisis does not counsel against overturning *Evans*. The "compelling reason" justifying a departure from precedent is that—without notice—the government changed its policy in cases removed under § 233(c). That incorrectly led us to incorporate this policy change into our law. This court should not surrender its prerogative to "say what the law is" to the Executive Branch. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385 (2024) (quoting *Marbury v. Madison*, 1 Cranch 137, 177 (1803)).

## I

### A

Congress enacted the Federal Tort Claims Act (the FTCA or the Act) in 1946. Pub. L. No. 79-601, §§ 401–24, 60 Stat. 812, 842–47 (1946). The "product of nearly thirty years of

congressional consideration," *Indian Towing Co. v. United States*, 350 U.S. 61, 68 (1955), this Act "streamlined litigation for parties injured by federal employees acting within the scope of their employment." *Brownback v. King*, 592 U.S. 209, 211 (2021).

At first, the Act was not exclusive. *Cf. Levin v. United States*, 568 U.S. 503, 506–07 (2013). It "afforded tort victims a remedy against the United States, but did not preclude [suits] against individual tortfeasors." *Id.* at 507. In other words, Congress had not immunized these federal employees from tort liability; it simply supplied a deeper pocket for recovery.

That changed in 1961. Congress began experimenting with immunizing tortfeasors from personal liability in the Federal Drivers Act. Pub. L. No. 87-258, 75 Stat. 539 (1961). The Drivers Act made the FTCA action against the United States "exclusive" for torts "resulting from the operation by any employee of the Government of any motor vehicle while acting within the scope of his office or employment." *Id.*

Beyond its immunity provisions, the Drivers Act had to address a critical procedural challenge. Many victims did not know that the driver who caused their injuries was a federal employee. And even if they did, they might not be sure that the employee was acting within the scope of his employment at the time of the incident. Both strategic and unwitting plaintiffs, then, would sue the tortfeasor in state court first. The former could extensively litigate whether the employee acted within the scope of his employment in state court, foiling Congress's choice to funnel such suits into federal court. And the latter might accidentally forfeit their only remedy by failing to follow the FTCA's statute of limitations.

Congress's solution to this problem was the two-pronged "scope certification" and removal procedure. *See Hui v. Castaneda*, 559 U.S. 799, 810–11 (2010). When a case filed in state court should have been filed as an FTCA action in federal court, the Attorney General first certifies that "the defendant employee was acting within the scope of his employment at the time of the incident out of which the suit arose." 28 U.S.C. § 2679(d) (1982 ed.). Upon such certification, the action then "shall be removed without bond at any time before trial" to the appropriate federal district court. *Id.*

At that point, "the proceedings [are] *deemed a tort action brought against the United States*" under the FTCA and "all references thereto." *Id.* (emphasis added). The Drivers Act did not, however, reference substituting the United States as the defendant. The only language in the statute that could authorize such a change is the "deem[ing]" provision. *Id.*

**B**

Throughout the next two decades, Congress enacted more immunity provisions based on the Drivers Act. Most of these provisions were identical, or nearly identical, to that act. *See, e.g.,* Pub. L. No. 89-311, § 6, 79 Stat. 1156–57 (1965) (medical professionals in the Department of Veterans Affairs, today codified at 38 U.S.C. § 7316); Pub. L. No. 94-464, 90 Stat. 1985–89 (1976) (the Gonzalez Act, covering military medical professionals, codified at 10 U.S.C. § 1089 & 51 U.S.C. § 20137); Pub. L. No. 96-465, § 2201, 94 Stat. 2153–57 (1980), codified at 22 U.S.C. § 2702 (State Department officials); Pub. L. No. 98-525, § 1631, 98 Stat. 2646–47 (1984) (torts related to radiation from atomic weapons testing programs); Pub. L. No. 99-661, § 1356, 100 Stat. 3996–98 (1986), codified at 10 U.S.C. § 1054 (military

legal malpractice). All these statutes contained the same scope certification and removal procedures for state court cases.

In 1970, Congress replicated the text of the Drivers Act for employees of the Public Health Service—the statute relevant here. The Service, a collection of federal agencies, organizes public health initiatives throughout the country and runs several government-owned hospitals and research institutes. *See About Us*, COMMISSIONED CORPS OF THE U.S. PUBLIC HEALTH SERVICE (last accessed July 14, 2026), https://www.usphs.gov/. So, Congress amended the Public Health Service Act (PHSA) to immunize the Service's employees against medical malpractice claims. Pub. L. No. 91-623, § 4, 84 Stat. 1870–71 (1970).

The language in the PHSA amendments is virtually the same as the Drivers Act. Upon certification and removal, a case against a covered employee is "deemed a tort action brought against the United States under the provisions of title 28 and all references thereto." 42 U.S.C. § 233(c). This statute also includes no language regarding substitution.

## C

Before 1988, then, Congress had enacted a patchwork of provisions immunizing a few pockets of federal employees from tort liability. That changed with the Westfall Act. Using the Federal Drivers Act as a framework, Congress made the FTCA remedy exclusive for all cases against all employees of the federal government who commit torts in the scope of their employment. 28 U.S.C. § 2679(b).

In some ways, the Westfall Act perfectly replicated the immunity provisions that came before. In other ways, it made meaningful changes. No portion of that act reflects this more than the scope certification procedures in § 2679(d)(1)–(2).

Most previous immunity provisions allowed scope certification and removal only in cases first filed in state court, but the Westfall Act added one for cases filed against individual defendants in federal court. *Id.* § 2679(d)(1). And though the Westfall Act included the traditional language about the action being "deemed to be an action or proceeding brought against the United States" after removal, it also added new language saying that "the United States shall be substituted as the party defendant." *Id.* § 2679(d)(2).

The only pre-Westfall Act immunity provision sharing both features was the National Swine Flu Immunization Program of 1976. Pub. L. No. 94-380, § 2, 90 Stat. 1113–17. Also known as the "Swine Flu Act," this statute piloted the use of federal scope certification procedures and automatic, mandatory substitution of the United States as defendant in all actions involving scope certification. *Brown v. United States*, 715 F.2d 463, 465, 467–68 (9th Cir. 1983). On this one point, the Westfall Act had more in common with the Swine Flu Act than its direct predecessor, the Drivers Act.

Congress made one final change in the Westfall Act, relevant here. It added a saving provision, *id.* § 2679(d)(5), which solved the long-standing "quandary in which a plaintiff may find himself if he has no reason to suspect that the defendant [tortfeasor] is a government employee." *Houston v. USPS*, 823 F.2d 896, 901 (5th Cir. 1987). Federal courts had long applied the FTCA's statute of limitations to these cases, so Congress intervened to fix the problem through the saving provision.

Crucially, the Westfall Act's saving provision expressly tied relief to substitution—not to removal or certification. By its plain terms, it applies whenever "an action or proceeding *in which the United States is substituted as the party defendant*

*under this subsection* is dismissed" for failure to exhaust administrative remedies. 28 U.S.C. § 2679(d)(5) (emphasis added). Under the Westfall Act, of course, removal, certification, and substitution go together—in cases where the plaintiff does not request judicial review of the government's scope certification, "the United States *must* be substituted as the defendant." *Osborn v. Haley*, 549 U.S. 225, 241 (2007) (emphasis added).[2]

In sum, if a plaintiff sues a government employee in state court, and if the Attorney General certifies that the employee was acting within the scope of employment under the Westfall Act, the United States is automatically substituted as the defendant in place of the employee. This case asks whether the last step is also true under the Westfall Act's predecessors.

## D

When Congress enacted the Westfall Act, it chose not to repeal any of the preexisting immunity provisions. That includes the 1970 amendments to the PHSA, found at 42 U.S.C. § 233. How the Westfall Act interacts with those statutes has been a source of controversy since it was first enacted. *See United States v. Smith*, 499 U.S. 160, 169–173 (1991).

---

[2] Throughout this dissent, I describe Westfall Act substitution as "automatic." I recognize that the Supreme Court has held that substitution might not proceed when plaintiffs challenge the Attorney General's scope certification decision. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434 (1995). Still, the Court noted in *Lamagno* that such cases are "unusual" because "the United States, by certifying, is acting *against* its financial interest, exposing itself to liability." *Id.* at 427. In most cases, then, it is fair to call this kind of substitution "automatic," as the Court indicated in *Osborn*. 549 U.S. at 246.

The issues raised by § 233 are becoming more salient because Congress has dramatically expanded the statute's scope. Though Congress has not amended the original skeleton since enactment in 1970, *see* § 233(a)–(f), it added several pieces through the Federally Supported Health Centers Assistance Act and subsequent legislation. Pub. L. No. 102-501, 106 Stat. 3268–72 (1992). Prompted by "concern[s] about the level of malpractice premiums for federally-funded neighborhood health centers," *Evans*, 132 F.4th at 478, this act created a procedure for deeming clinics and their doctors "employee[s] of the Public Health Service," allowing any medical malpractice claims to run against the United States. 42 U.S.C. § 233(g)(1)(A).

Over time, this statute has ballooned into a complex "thicket," which "is hardly a model of clarity." *Blumberger v. Tilley*, 115 F.4th 1113, 1126 (9th Cir. 2024). Adding complexity is the fact that the number of "deemed" health clinics and employees covered by this statute has grown exponentially in the last decade. This court noted in 2013 that there were "at least three such centers in Chicago besides" the one involved in that case. *Arteaga v. United States*, 711 F.3d 828, 834 (7th Cir. 2013). That number has increased fivefold. *See* "Federal Tort Claims Act Search Tool," HRSA Data Warehouse (last accessed July 14, 2026), https://data.hrsa.gov/topics/health-centers/ftca-search-tool. In this circuit alone, there are nearly eighty "deemed" clinics, indicating that this statute is poised to become more prominent over time. *Id.*

## II

This case presents the question of whether the United States can be automatically substituted as the party defendant under 42 U.S.C. § 233(c). As the government admits, only one

piece of the statute could accomplish this: the language stating that after certification and removal, the proceedings are "deemed a tort action brought against the United States." *Id.* Herrera contends that § 233(c) does not contain the mandatory substitution language added to the Westfall Act—"the United States shall be substituted"—so the "deeming" provision cannot facilitate "substitution."

To make that call, we must determine the ordinary or legal meaning of the phrase "deemed a tort action brought against the United States." *Craig v. City of Richmond*, 179 F.4th 535, 540 (7th Cir. 2026). This court did not consider that issue in *Evans*; it assumed the government can "substitute[] itself as a defendant under § 233(c)" alone. *Evans*, 132 F.4th at 478; *see also id.* at 475, 479.

Both the text and the statutory history challenge that assumption. A case "deemed" a tort action brought against the United States is one that satisfies the jurisdictional requirements of the Federal Tort Claims Act without literally substituting the United States as defendant. To read it any other way renders that language superfluous and contradicts historical practice.

**A**

I begin with the plain text of 42 U.S.C. § 233(c). But because that statute is nearly identical to both the Westfall Act and the historical exclusivity provisions discussed above, § 233 should be read *in pari materia* with these other provisions. ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 252–55 (2012).

Further, the Westfall Act amended the Federal Drivers Act. Those statutes share many similarities, so the

"Reenactment Canon" of interpretation also applies. *Id.* at 256–60. This canon directs interpreters to look at "statutory history" and consider whether Congress reenacted the same language or made significant changes. If the latter, any change "is presumed to entail a change in meaning." *Id.* at 256. As the Supreme Court has said, "if a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." *Sekhar v. United States*, 570 U.S. 729, 733 (2013).

Finally, I note the importance of the canon against surplusage and the presumption of consistent usage. *See Supervalu, Inc. v. United Food and Comm. Workers Unions and Empls. Midwest Pension Fund*, 155 F.4th 913, 927–28 (7th Cir. 2025). Though evidence in the text of a statute can rebut these presumptions, courts generally assume that similar language in related statutes mean the same thing. *Id.* So too do we presume different words mean different things—especially when they are used in the same sentence.

With these interpretive principles in mind, I start by comparing the text of the two statutes. The PHSA amendment, 42 U.S.C. § 233(c), says that upon scope certification, a case commenced in state court:

> shall be removed [to federal court] … and the proceeding deemed a tort action brought against the United States under the provisions of title 28 and all references thereto.

The Westfall Act, 28 U.S.C. § 2679(d)(2), is largely the same, but it adds a key phrase. After scope certification, the case:

> shall be removed [to federal court] …. Such action or proceeding shall be deemed to be an

> action or proceeding brought against the
> United States under the provisions of this title
> and all references thereto, *and the United States*
> *shall be substituted as the party defendant*.

The minor differences between the two statutes do not matter. *See* SCALIA & GARNER, *supra*, at 256 (the reenactment canon "does not apply to stylistic or nonsubstantive changes."). For our purposes, what matters are the major similarity and difference. Both have a "deeming" provision. But only the Westfall Act has a clause on mandatory substitution.

This comparison raises the first doubt about *Evans*. If the "deeming" provision facilitated substitution of the United States as the defendant, why would Congress (1) keep that provision in the Westfall Act, but (2) add that "the United States shall be substituted" as defendant? Reading the statute this way risks rendering the express substitution language in the Westfall Act superfluous.

On the text of these statutes, I see no reason to read the deeming provisions as meaning different things. So, I presume consistent usage of "deemed" across § 233(c) and the Westfall Act. This is especially justified because the Federal Drivers Act, the predecessor to both § 233 and § 2679, also used the same word in the same context. It would be strange to assume Congress changed the phrase's meaning when it reenacted the same language in both places.

Consider now the ordinary and legal meaning of "deem." When a court "deems" something to be true, it makes it so— even if it is not literally true. *Deem*, BLACK'S LAW DICTIONARY (4th ed. 1968) ("To hold; consider; adjudge; … determine; *treat as if*; construe.") (emphasis added). That comports with the

ordinary meaning of the term: "to come to view, judge, or classify after some reflection," or "hold." *Deem*, WEBSTER'S THIRD NEW INT'L DICTIONARY 589 (1966).[3] In other words, when a court "deems" something to be true, it creates a legal fiction. It would be odd to assume a case "deemed to be an action brought against the United States" must become one in fact.

To see this point, turn to the other two places the word "deem" is used in this statutory scheme. 42 U.S.C. § 233(g) and (o)–(q) allows the Attorney General to "deem" people, and even organizations, as "employees" of the Public Health Service, although they are not literal employees of the agency (and some are not even human beings). And the Westfall Act saving provision allows a claim to "be *deemed* to be timely presented." 28 U.S.C. § 2679(d)(5) (emphasis added). Of course, such a claim does not satisfy the literal terms of the Federal Tort Claims Act's statute of limitations. *Id.* § 2401. Rather, it is "treat[ed] as if" it is timely. *Deem*, BLACK'S LAW DICTIONARY (4th ed. 1968). That is the whole point of "deeming" something to be true—it makes it so in fiction, not in fact.

Putting these points together, the best interpretation of the deeming provision is that it does not automatically substitute the United States as the defendant in removed actions. Instead, it does the exact opposite. It allows cases to proceed in federal court after scope certification and removal, even when

---

[3] The definition of "deem" has remained stable over time, but I rely on dictionaries from the time § 233 was enacted. *See United States v. Wooden*, 174 F.4th 551, 558 (7th Cir. 2026). Its current definition supports my point even more directly: to "deem" is to "treat (something) as if (1) it were really something else, or (2) it has qualities that it does not have." *Deem*, BLACK'S LAW DICTIONARY (12th ed. 2024).

the United States has not been substituted as the party defendant.

**B**

Unsurprisingly, the statutory history supports the plain meaning of the text. For decades, courts deciding cases under federal tort immunity provisions did not act as if automatic substitution was available under the removal provisions. Though substitution did occur, it proceeded through "the ordinary rules of … procedure," *Hui*, 559 U.S. at 811, including motions made under the Federal Rules of Civil Procedure to add the United States as a defendant. For a few illustrative examples, *see Certain Underwriters at Lloyd's v. United States*, 511 F.2d 159, 161 (5th Cir. 1975) (PHSA); *Flickinger v. United States*, 523 F. Supp. 1372, 1373–74 (W.D. Pa. 1981) (same); *Kelley v. United States*, 568 F.2d 259, 261–64 (2d Cir. 1978) (Drivers Act); *Tazelaar v. United States*, 558 F. Supp. 1369, 1370 (N.D. Ill. 1983) (same); *Benitez v. Presbiterian Hosp.*, 539 F. Supp. 470, 471 (D.P.R. 1982) (Veterans Affairs statute); *Lewis v. Schacher*, No. 86-3865, 1986 WL 10803 (E.D. Pa. 1986) (Gonzalez Act). *See also Smith*, 499 U.S. at 162–63 (substitution by motion).

Most strikingly, there were several cases in which the United States was not added as a defendant at all. This fact is particularly strong evidence that the "deeming" provision does not provide for automatic substitution. A longstanding principle of cases under the Federal Tort Claims Act is that "an agency or government employee cannot be sued *eo nomine*," or by its own name, under the Act. *Galvin v. OSHA*, 860 F.2d 181, 183 (5th Cir. 1988). This requirement is jurisdictional. *Id.*; *see also F.D.I.C. v. Meyer*, 510 U.S. 471, 476–77 (1994). The grant of jurisdiction for FTCA claims authorizes "civil actions on claims *against the United States*." 28 U.S.C. § 1346(b)(1)

(emphasis added). There is no such thing as an "official capacity" FTCA suit; the action must run against the United States.

Plaintiffs cure these defects through a motion to amend the complaint under Rule 15. *Jackson v. Kotter*, 541 F.3d 688, 693–97 (7th Cir. 2008); *City of Whittier v. U.S. Dep't of Just.*, 598 F.2d 561, 562–64 (9th Cir. 1979). Currently, if a plaintiff sues an individual defendant in federal court, and the attorney general does not engage in scope certification, *see* 28 U.S.C. § 2679(d)(1), the action will be dismissed for lack of subject matter jurisdiction absent an amended complaint.

Historically, though, in many cases the United States was not substituted as a defendant at all after scope certification and removal. *See, e.g.*, *Van Houten v. Ralls*, 411 F.2d 940, 942 (9th Cir. 1969) (Drivers Act); *McGowan v. Williams*, 623 F.2d 1239, 1241 (7th Cir. 1980) (same); *Wollman v. Gross*, 637 F.2d 544, 546 (8th Cir. 1980) (same); *Nasuti v. Scannell*, 792 F.2d 264, 265 (1st Cir. 1986); *Quilico v. Kaplan*, 749 F.2d 480, 481 (7th Cir. 1984) (Veterans Affairs statute); *Powers v. Schultz*, 821 F.2d 295, 296 (5th Cir. 1987) (district court grants motion to substitute in Gonzalez Act case, but no change in the case caption); *Lien v. Beehner*, 453 F. Supp. 604, 605–06 (N.D.N.Y. 1978) (PHSA case with no substitution). And in other cases, the court considered a motion to substitute many months after the government removed the case. *E.g.*, *Apple v. Jewish Hosp. and Med. Ctr.*, 570 F. Supp. 1320, 1322 (E.D.N.Y. 1983); *Miller v. United States*, 741 F.2d 148, 151 (7th Cir. 1984).

If the deeming provision was supposed to facilitate substitution, it did not do so in these cases. More importantly, such cases should have been dismissed for lack of subject matter jurisdiction. That they were not reveals the main effect of the "deeming" provisions: they satisfied the FTCA's

jurisdictional requirements without formally substituting the United States as the defendant in the case. That comports with the ordinary meaning of the text. Courts treat "deemed" cases as if they satisfy the plain terms of the jurisdictional statute.

Some courts explicitly recognized the connection between the deeming provision and FTCA jurisdiction. In *Henderson v. United States*, for example, several injured plaintiffs sued a government employee in Oklahoma state court under the Federal Drivers Act. 429 F.2d 588, 589 (10th Cir. 1970). After certification and removal, the government tried to dismiss the case on statute of limitations grounds.[4] But the district court denied the motion, and the Tenth Circuit affirmed. In its view, the "deeming" language transformed the case, such that "the United States became a party as a matter of law when the action was filed in the state court, regardless of when it was formally substituted as a party defendant." *Id.* at 590–91. That is, the text of the Drivers Act made the case run against the United States independent of who was listed in the caption.

Nearly fifteen years later, this court adopted similar reasoning. In *Miller v. United States*, the government argued that a suit was untimely "because plaintiff did not formally add the United States as a party defendant until … more than six months after" her administrative claim was filed. 741 F.2d at 151. The court disagreed. Noting the action was "deemed a tort action brought against the United States … upon certification and removal" (not substitution), the court held that "the United States became a proper party to the action long

---

[4] The conduct in *Henderson* occurred before the FTCA's statute of limitations was amended to require exhaustion of administrative remedies. *See* Pub. L. No. 89-506, § 10, 80 Stat. 308 (1966).

before the statute of limitations expired." *Id.* (citation modified). *Miller* survived in federal court for nearly six months without the United States being added as a defendant, even though that should have been a jurisdictional defect.

In this way, cases removed and certified under the pre-Westfall Act immunity provisions became de facto "official capacity FTCA suits," even though such cases are not allowed otherwise. This court recognized as much in *McGowan v. Williams*.[5] That case held that the FTCA's statute of limitations began running when the plaintiff filed in state court, not when the government removed the case. 623 F.2d at 1240. Along the way, the court cited the Tenth Circuit's *Henderson* decision for the proposition that the "Attorney General's certification means that the plaintiff can no longer sue the driver in his individual capacity." *Id.* at 1242. This court expressly tied this point to the deeming provision. *Id.*; *see also Thomason v. Sanchez*, 539 F.2d 955, 958 (3d Cir. 1976) (the Drivers Act "had the effect of limiting anyone injured by Sanchez *in his official capacity* to a lawsuit under the [FTCA]" (emphasis altered)).

The government does point to two pre-Westfall Act cases which may appear to involve automatic substitution under the Federal Drivers Act. *Carr v. United States*, 422 F.2d 1007, 1009 (4th Cir. 1970), *and United States v. Le Patourel*, 571 F.2d 405, 406 and n.1 (8th Cir. 1978). But neither case describes how substitution occurred. Without more, I assume that these cases involved substitution by an independent motion—as was the most common method at the time. *See, e.g., Wilkinson v. United States*, 677 F.2d 998, 999, 1001 (4th Cir. 1982) (motion

---

[5] The Supreme Court cited *McGowan* with approval in *Lamagno*, 515 U.S. at 425.

used for substitution); *United States v. Slone*, 405 F.2d 1033, 1034 (8th Cir. 1969) (same). And even if they did not, these one-off examples would not overcome the weight of practice.

In contrast to these ambiguous examples, another statute shows the importance of text authorizing substitution: the Swine Flu Act. As noted above, this act was the only pre-Westfall Act statute containing language about substitution. In the early 1980s, the D.C. Circuit considered a mass tort suit about the federal government's hasty efforts to vaccinate people against the Swine Flu. *Hunt v. United States*, 636 F.2d 580, 589–90 (D.C. Cir. 1980); *see also In re Swine Flu Immunization Prods. Liab. Litig.*, 533 F. Supp. 703, 705 n.2 (D. Utah 1982) (summarizing the nationwide litigation).

That court's description of the Swine Flu Act noted the statute's "unique approach to the problem of liability" required treating "the United States [a]s a substitute defendant." *Hunt*, 636 F.2d at 591, 597. In a similar case, the Ninth Circuit was even more explicit. Claims against manufacturers covered by the act must "be brought against the United States, utilizing the procedures of the Tort Claims Act, with the United States substituting … as the party defendant." *Brown*, 715 F.2d at 465. When it summarized the substitution clause, the court bluntly observed, "The only reason why the United States had to be named the defendant here is simply because the Swine Flu Act says so." *Id.* at 467–68. And in a footnote, the court rejected the government's attempt to equate the Swine Flu Act with the Drivers Act and the other "federal malpractice immunity statutes." *Id.* at 467 n.5.

Congress knew how to draft a statute unambiguously providing for automatic substitution. It did so in the Swine Flu Act, and again in the Westfall Act. But when it enacted the

latter, it chose not to amend the other pre-Westfall Act immunity statutes to make this procedure available.[6] Courts should not amend the statute for Congress.

*       *       *

In pre-Westfall Act federal tort suits, courts did not often consider the question of how, or whether, the United States became a defendant. When they did, they confirmed the plain meaning of the "deemed a tort action" language. Rather than substituting the government as the defendant, the statute permitted cases to proceed in federal court without substitution. Of course, the "deeming" provision also made substitution appropriate under the ordinary rules of civil procedure. *Cf. McGowan*, 623 F.2d at 1242–44. But the whole point of the provision is that it obviated the need for such a change.

III

*Evans* assumed substitution could occur under § 233(c) alone. But as I understand the plain meaning of that statute, nothing in its text supports that assumption. That means the opinion incorrectly held that the Westfall Act's saving provision did not apply.

To be fair, the panel of our court that decided *Evans* is not to blame. The fault for this confusion lies with the Executive

---

[6] Congress did so for good reasons. For example, it avoided the exact problem that the Supreme Court faced in *Lamagno*. Before proceeding with the case in federal court under the Drivers Act, the Court exercised a gate-keeping function, deciding whether the case should be remanded to state court. *Lamagno*, 515 U.S. at 425–26; *see also* 28 U.S.C. § 2679(d) (1982 ed.); *Van Houten*, 411 F.2d at 942–43 (determining scope of remand provision). Congress removed the language creating that rule in the Westfall Act, but that language remains in § 233(c).

Branch. At some point between 2013 and 2019, the Department of Justice changed its policy for handling cases under § 233(c). Before then, it removed these cases under the Westfall Act alone or in tandem with § 233. When asked about this change in position at the oral argument for *Evans*, the government replied: "Many mistakes have been made in this area." *Evans* Oral Arg. at 22:57–24:02.

To me, these compelling circumstances warrant overruling *Evans*, notwithstanding the doctrine of stare decisis. To conclude this opinion, I explain why the Westfall Act's saving provision applies to cases like Herrera's when the government substitutes itself as the defendant. Then, I describe why stare decisis does not preclude us from reconsidering *Evans*.

### A

In both *Evans* and this case, the government represented that substitution occurred automatically upon removal under 42 U.S.C. § 233(c) alone. *See* supra note 1. That is not possible. The statute lacks the language facilitating substitution found in the Westfall Act and the old Swine Flu Act. And as shown above, the "deeming" provision accomplishes the opposite of substitution, letting cases proceed in federal court even though the United States is not defendant. We should not rewrite the statute to find language mandating substitution where none exists.

The only way the government could have substituted itself as defendant without a court order, then, was through the Westfall Act. If so, that means "the United States [was] substituted as the party defendant *under this subsection*," as required by that act's saving provision. 28 U.S.C § 2679(d)(5). The core textual insight of *Evans*—that the saving provision applies

only when substitution occurs via the Westfall Act—is correct. But the government did substitute itself under the Westfall Act in both *Evans* and this case. Otherwise, it could not have done so without further court review.

One might wonder whether the statutory scheme permits use of the Westfall Act in a PHSA case. On this point, *Evans* spoke with two voices. It collected examples of several cases in which "the United States substituted itself as a defendant either under § 2679(d) alone or under both § 2679(d) *and* § 233." *Evans*, 132 F.4th at 479. As that precedent suggested, the Westfall Act and PHSA could be used together. But the court also rejected the idea that § 233(c) "incorporate[d] the FTCA wholesale." *Id.* at 478. It drew this concern from *Hui v. Castaneda*—the only Supreme Court case interpreting § 233. *Id.* at 478–79 (citing *Hui*, 559 U.S. at 811) (in *Hui* "the Supreme Court has rejected a previous attempt to argue that § 233 incorporates the FTCA in its entirety").

I see nothing in the text of either statute preventing the government from invoking the Westfall Act in removed cases. In fact, both statutes appear to permit it. Section 233(c) states that a removed case is "deemed a tort action brought against the United States *under the provisions of title 28 and all references thereto*." (emphasis added). Even though this language predates the Westfall Act, it still incorporates that act by reference, as it is codified in title 28 at § 2679. Further, the Supreme Court has long held that the Westfall Act covers all federal employees—even those also implicated by preexisting immunity statutes. *Smith*, 499 U.S. at 172–73. As this court has said, § 233(c) "at least on its face, does not appear to foreclose application of the Westfall Act to federally funded health

centers." *P.W. by Woodson v. United States*, 990 F.3d 515, 522 n.4 (7th Cir. 2021).[7]

*Hui* does not require a different result. There, the Supreme Court held that § 233(a) made Federal Tort Claims Act actions the exclusive remedy for harms caused by Public Health Service employees—foreclosing the possibility of a *Bivens* action. *Hui*, 559 U.S. at 808.

In reaching that conclusion, the Court did reject the argument that § 233(a) "incorporates the entirety of the FTCA, as amended by the Westfall Act, through its reference to" 28 U.S.C. § 1346(b) alone. *Id.* at 808. That is undoubtedly correct. As the Court noted, the text of § 233(a) references only "sections 1346(b) and 2672 of title 28." And § 233(a) "refers only to the *remedy* against the United States." *Hui*, 559 U.S. at 809 (citation modified). Taken together, these points showed that "only those portions of [the FTCA] that establish the [Act's] *remedy* are incorporated by" § 233(a). *Id.* (emphasis added).

Section 233(c) is different. Unlike § 233(a), the text of subsection (c) references "the provisions of title 28 and all references thereto"—a much broader cross-reference than Congress used in the remedial portion of the statute. This is a meaningful difference between the two subsections of § 233.

---

[7] My understanding of the text and statutory history raises a difficult question. Can the government remove a case under § 233(c) alone, then refuse to substitute the United States as defendant or do so via motion? If yes, then the government could circumvent the Westfall Act's saving provision on another technicality. If no, that would mean the reference to the case being "deemed a tort action brought against the United States under the provisions of title 28 and all references thereto" likely incorporates the procedural provisions of the Westfall Act. It is possible, if challenging, to square this result with *Hui*. I take no position on this issue.

The difference also follows logically, as Congress may have wanted to foreclose *Bivens* actions for all PHSA suits while still allowing a case erroneously filed in state court to proceed as if it were filed in federal court. The "deeming" provision accomplishes that goal by incorporating the *procedures* of the Westfall Act without speaking to the scope of the *remedy* it affords. So, *Hui* does not require a ruling for the government.[8]

**B**

These issues counsel in favor of overruling *Evans*. When the Supreme Court considers overruling its own precedent, the first questions it asks are about "the nature of [the] error" and the "quality of [the] reasoning" in the opinion. *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 268 (2022). It also considers "the 'workability' of the rules [it] imposed," the effect of the opinion on "other areas of the law," and any reliance interests on the opinion. *Id.* It regularly reminds us that stare decisis "has never been treated as an inexorable command." *Ramos v. Louisiana*, 590 U.S. 83, 105 (2020) (citation modified).

This court takes a different approach. As the per curiam opinion observes, we consider whether there are "compelling reason[s]," like "some other important new information," justifying the change. *Bethesda Lutheran Homes and Servs., Inc. v. Born*, 238 F.3d 853, 858 (7th Cir. 2001). But even this court

---

[8] *Hui* also contains some language suggesting that scope certification, not the language in the Westfall Act, effectuates substitution. 559 U.S. at 810–11 and n.9. The Court said that after scope certification and removal, the action is "transform[ed] [into] an action … against the United States." *Id.* at 810. But that change occurs because the statute says so. If *Hui* is read to imply that scope certification under the PHSA effectuates substitution, that reading would come into conflict with § 233's text.

agrees that stare decisis "is not a conclusive reason" for refusing to correct an erroneous decision. *Tate v. Showboat Marina Casino P'ship*, 431 F.3d 580, 583 (7th Cir. 2005). "Although we must give considerable weight to our prior decisions, we are not bound by them absolutely and may overturn circuit precedent for compelling reasons." *FTC v. Credit Bureau Ctr., LLC*, 937 F.3d 764, 776 (7th Cir. 2019).

Under either formulation, I believe that *Evans* cannot stand. The text and history of 42 U.S.C. § 233 contradict the opinion's reasoning. And the government has sown confusion into our law by failing to disclose the extent of its policy changes for § 233(c) cases.

For well over a decade in the early- and mid-2000s, the United States Attorney's office in the Northern District of Illinois relied on the Westfall Act, by itself or in tandem with § 233(c), when it removed cases and substituted the United States as the defendant. At some point in 2014, though, that office began invoking § 233 alone. *Compare Houston v. United States*, 638 F. App'x 508, 510 (7th Cir. 2016) (the last case I found invoking both acts in notice of removal), *with Tillman v. United States*, No. 3:14-cv-50225, 2015 WL 14068425 (N.D. Ill. 2015) (district court's order references both Westfall Act and § 233, but the filings rely on only the latter).

That shift foreshadowed a national trend. In 2018, the Department of Justice overhauled its United States Attorneys' Manual, replacing it with the "Justice Manual." The new manual added a provision directing that "[i]n community health center cases, certification and removal should be done exclusive[ly] under 42 U.S.C. § 233." U.S. DEP'T OF JUST., JUST. MANUAL § 4-5.630 (2026). The same section in the old manual simply authorized attorneys to "make the certification

provided for in" all federal removal statutes "in order to substitute the United States as defendant in place of federal employees." U.S. DEP'T OF JUST., U.S. ATT'YS MANUAL § 4-5.630 (2007).

This court developed nearly a decade's worth of precedent based on the government's old policy. In *Alexander v. Mount Sinai Hospital Medical Center*, 484 F.3d 889 (7th Cir. 2007), the court noted on three separate occasions that "the United States invoked both section 233 and section 2679(d)(2)" in its notice of removal. *Id.* at 896; *see also id.* at 892, 894. Because of this, the court relied on the Westfall Act to establish jurisdiction. *Id.* at 894–97. Other cases also depended on this policy. *See, e.g.*, *Blanche v. United States*, 811 F.3d 953, 957 (7th Cir. 2016); *Arroyo v. United States*, 656 F.3d 663, 667 (7th Cir. 2011).

In another line of cases, this court assumed that the Westfall Act's saving provision would apply to § 233 cases— whether the case was filed under that provision or not. *Arteaga*, 711 F.3d at 830–31; *Blanche*, 811 F.3d at 958; *E.Y. ex rel. Wallace v. United States*, 758 F.3d 861, 864 (7th Cir. 2014); *Chronis v. United States*, 932 F.3d 544, 549 n.5 (7th Cir. 2019) (Barrett, J.). And we even observed that substitution must proceed under the Westfall Act, not the PHSA. *Rodas v. Seidlin*, 656 F.3d 610, 613 (7th Cir. 2011) ("The United States removed the case to federal court, substituting itself as a party …. *See* 42 U.S.C. § 233(c) (removal); 28 U.S.C. § 2679(d)(1) (substitution).").

When the government changed its policy, the language in this court's opinions followed suit. *See Chronis*, 932 F.3d at 546. In 2020, the government began advocating for us to separate § 233 cases from other Westfall Act cases—an invitation we initially declined. *See P.W. by Woodson*, 990 F.3d at 522–23. But in *Evans*, we blessed the government's new approach.

Just one year ago, our court reached a decision that contradicted this history. That decision interpreted the statute without the benefit of a critical, outcome-determinative argument—whether the phrase "deemed a tort action" permitted substitution or not. And at the oral argument for *Evans*, a judge on the panel asked the government about the change of policy and why it had "come to" its novel interpretation of § 233(c) "only recently." When the government replied that "many mistakes have been made in this area," that judge perceptively asked, "Mistakes? Or changes of policy?" Oral Arg. at 22:57–24:02. In response, the government did not concede error and instead argued that the plain text of the statute supported its position. In this way, the government helped create the interpretation of the statute it now seeks to protect through stare decisis.

Congress expanded the PHSA to "increase the availability of medical care in underserved communities." *Evans*, 132 F.4th at 477. But the government has crafted a policy undermining Congress's valid, unambiguous waiver of sovereign immunity for community health clinic cases. By doing so, it denies recovery to those the statute was meant to protect. And as the number of clinics covered by the statute increases by the year, it will only become more important to follow Congress's preferred procedures. The *Evans* decision leads us away from what the text of the statute requires.

## IV

The text and history of 42 U.S.C. § 233 demonstrate that *Evans v. United States* was incorrectly decided. The compelling reason to overrule that case is that without notice, the government changed its policy for cases removed to federal court under § 233(c). That change made its way into our caselaw,

leading us away from the proper interpretation of the statute. Accordingly, I respectfully dissent. I would reverse and remand, taking this opportunity to correct our precedent and follow the plain text of the statute.